We will hear argument next in case number 18-1636, IP Co., v. Emerson Electric. Mr. Gonzalez, welcome back. Thank you, Your Honor. May it please the Court, the Board's obviousness decision is based upon an incorrect claim construction. It may be easier if you turn to page 100 of the appendix at column 23, line 44. I'm sorry, could you repeat that, sir? Sure. 100 of the appendix, column 23, line 44. In the patent? Yes. Column 33? Column 23. I'm sorry, 23, line 44.  A digital controller changes the transmission paths of clients to optimize the transmission paths, including changing the transmission path from the client to the gateway. The Board erred by omitting the plain and ordinary meaning of three important claim terms from its claim construction. Number one, the claim term transmission. Number two, changing the transmission path. And number three, optimizing the transmission path. The term path in this claim limitation is preceded by the adjective transmission, and therefore the path must transmit data. A list of nodes in a network that are not operating and that are not transmitting does not qualify as the claimed transmission path. And you're making an argument of ordinary meaning at this point, and it seems to me there's nothing odd about saying yesterday this path was working, and so that was a transmission path, and I'm going to change it because today it's not working. This is just a different version of the I-95 way of thinking about this problem. Okay, the reason why the I-95 scenario is not applicable to this problem is because there's a fundamental difference between transmitting data and driving on a highway. In order to transmit data from one node to another... I'm sorry, I probably confused things by saying I think of this as like the I-95. Just get back to where I started. Yesterday this path worked for transmission, but I'm going to keep calling it a transmission path, and I'm now changing it because today it doesn't work. I'm changing it to a transmission path that works. Just as a matter of ordinary meaning, there doesn't seem to me to be anything odd about referring to the path that today is not working as a transmission path. Well, I believe that's incorrect because in order to be a transmission path, it has to transmit at the time that you change it or optimize it. The use of the term changing within the claim limitation further confirms that the transmission path must exist because a transmission path or anything else cannot be changed unless it exists. Similarly, the use of the term optimizing within the claim limitation further confirms that the transmission path must exist because a transmission path or anything else cannot be optimized or improved unless it exists. The Board also erred in failing to consider that the claim requirement of changing and optimizing an existing transmission path is consistent with the specification. The specification of the 516 patent confirms that the claims require changing and optimizing an existing transmission path. At appendix page 93, column 9, lines 6 through 8, the specification states that the present invention is constantly attempting to optimize itself for the best data transmission. By the way, there's no dispute here that this patent has expired. So the Patent Office as well as this Court should be construing the claim according to the Phillips standard, which places a lot of importance on the specification. At page 93 of the appendix, column 9, lines 11 through 15, the specification explains that the invention will look for a better path if an existing path includes a client node that is too busy. The traffic of data packets, this is a quote from column 9, line 11, the traffic of data packets through a particular client node may be large such that it is better to route the data from neighboring clients through other clients. The specification also explains that the invention looks for a better path if an existing path includes a link that is less robust or slower at column 9, lines 16 through 19, which says as follows, some radio links may be less robust or may be slower than other links such that the optimization may result in a routing of data around the less robust or slower links. At column 11 of the patent, page 94 of the appendix, the specification indicates that a client with an existing path to a server will listen for shorter paths to the server. It says as follows, the optimization occurs when clients hear transmissions from other clients that have a better, i.e., shorter path to a server. Now, the board's flawed construction of changing and optimizing an existing transmission path requires reversal of its ruling that the prior art would have taught this limitation. The board in Emerson relied on Birchfield's disclosure of finding paths when a repeater fails or a new terminal enters the network. And this is at their red brief. And Emerson's red brief at pages 36 to 37. But as I explained, the claims require changing and optimizing an existing transmission path. What about the part of the board's rationale that relies on Birchfield teaching optimizing the paths once new terminals are added to the network? Forget about the part where the repeaters fail, but the portion where the board is focusing on Birchfield disclosing that when you add new terminals to the network, paths get recalculated. And I assume the board is therefore saying there might be more efficient paths from one particular terminal to the base station through the new terminals that have been added. I understand your question. There's only two situations that are in Birchfield, and you mentioned one of them, is when a terminal enters the network. When a terminal enters the network, there cannot be an existing transmission path through that terminal because it hasn't yet entered the network. And that's number one. And there's no indication in Birchfield's initialization routine that after it calculates a path to a terminal that just entered the network, that it recomputes other paths. That's simply not in Birchfield. I believe that the board cited pages 247 and 248 of Birchfield, and Birchfield doesn't say that. But that's the board's understanding of Birchfield, am I right? The board's reading of Birchfield, I just want to make sure I understand the board's reading of Birchfield, is that paths do get recalculated, and perhaps more efficient paths are found once new terminals are entered, so then you can hop through the new terminals instead of the preexisting terminals. Is that a fair understanding at least of what the board thinks Birchfield is teaching? I think the final written decision is a little bit ambiguous on that point. But the one thing I remember from the hearing is that... So you're saying to me it's not so clear to you that the board had two separate rationales of why it found Birchfield is disclosing, is changing the transmission paths to optimize? Well, it's clear to me that... I thought I saw the board saying two different things. One was relying on when nodes fail in Birchfield, you can redirect the path. But then the other rationale is when new terminals, new nodes enter the network, then you can reroute through those new nodes if it's a more efficient way of doing it. You're right, those are the two bases on which the board found that this claim limitation would have been obvious. So then you have to overcome both those rationales. Correct. And in the rationale where a terminal fails, there's no existing transmission path through that terminal. And with respect to a terminal entering the network, there is no existing transmission path through that terminal because it has not yet entered the network. And there's no indication in Birchfield, which during the hearing the board reminded me that they don't take, for instance, expert testimony to be true on its face, that they could actually go back and look at the reference themselves. In fact, this was Appendix 569, line 15. Judge Gianetti said we could read the references ourselves and disagree with him, meaning the expert. So when you look at the Birchfield reference itself, on the pages cited in the final written decision and in Emerson's papers, there's no indication that after a terminal enters the network and a path is computed to that terminal, which does not qualify as changing an existing path because the path does not yet exist, there's no indication that it will recompute paths to other terminals that have already been initialized into the network. With respect to the board's I-95 theory, what I was attempting to say before is there's a fundamental difference between driving a car in I-95 and a transmission path. And here's the difference. In order to have a transmission path between one radio frequency node and another, both radio frequency nodes have to be operating. They have to be functioning. If they're not functioning, if one isn't transmitting or receiving, or the other is not transmitting or receiving, you cannot have a transmission path between the two. But in the case of driving on I-95, between the patent office in New York City, which was the example that the board gave, even if the power was cut to the entirety of New York City and also cut to the patent office, to where neither endpoint was functioning, the road would still be there. And that's why, there are two reasons why it was inappropriate for the board to bring up the I-95 theory. Because it's totally different than the situation we have with the claimed invention, number one. And number two, it wasn't raised until the hearing, and this court has indicated on multiple occasions that it violates the APA's notice provision to introduce new theories at the hearing. Whether this was something that Emerson shouldn't have done, and the board should have prevented Emerson from doing it, but the board actually did it themselves. You are into your rebuttal time. You can use it now or save it. I think I'll save it. Thank you. Mr. Davis. May it please the court. Jim Davis for Emerson Electric, Your Honor. Each of those arguments failed for several independent reasons. Not only is the board's claim construction correct as a matter of law, but substantial evidence also supports the board's finding that these limitations are met not only under the board's construction, but also under IPCO's. Starting first with the issue of claim construction. The board properly pointed out that the plain meaning of the term changing the transmission path is simply the transmission path that needs to be changed. As Your Honor pointed out, if a transmission path existed yesterday and was working yesterday and today is no longer working and needs to be changed, that would meet the claim limitations. Is there anything in the specification that talks about moving away from a path that is at the moment of moving away not functioning at all, as opposed to not functioning very well, comparatively not functioning compared to when you're moving to? So in particular, I think it was the Column 9 material that was referenced seemed to be all about transmission paths at the time of moving away were functioning. Yes, Your Honor, thank you for the question. I think if you just continue reading down in Column 9, this is at lines 51 to 53. The line there says, however, even if a radio modem is turned off, the remaining clients will reroute through other clients as will be assessed subsequently. That's precisely that situation where that particular node in the path is no longer working. There needs to be changes to the paths because that node is no longer working. That's consistent with the rest of the disclosure. There's another form of the same thing, simply changing a transmission path. That interpretation that the board had is supported in the specification itself in the very neighboring passages that IPCO's counsel is citing. The topic came up of power failure. If you look earlier on in that same column, Column 9, around line 29, if the Client 18 is lost, for example, to a power or system failure, the data packets for Client 18C can be routed through Client 18D, again talking about a similar circumstance where you're rerouting the particular node as no longer operating, no longer transmitting or receiving. Turning to the next issue, though, of whether or not the board's findings were supported by substantial evidence, Judge Chen, as you correctly pointed out, this is supported not only under the board's construction but also under IPCO's construction. At Appendix 2514, the board identified a passage in Birchfield that's expressly discussing the situation where a repeater fails and you need to recompute minimum distance routes that you need to optimize in that circumstance. That would meet the construction under the board's proper interpretation of the claims, but also under IPCO's interpretation of the claims. Your Honor had mentioned that there were two places, and I believe the closing counsel acknowledged there are two different theories here, the second theory being on Appendix 24, where the board analyzes Birchfield also under Pat Nutter's interpretation of this changing the transmission path limitation and finds that as Petitioner points out, this is in the first full paragraph there, Birchfield constantly performs dynamic routing changes that involve optimization citing to Birchfield at pages 247 and 248, which I believe corresponded 2513 and 14 of the appendix, as well as page 250 of Birchfield, which corresponds to appendix 2516 of the Birchfield reference. Where in Birchfield does it actually say, when these new terminals come on board the network, then we're going to see if it makes sense to change the existing pathway over and create a new, more efficient pathway through one of these new nodes, one of these new terminals. Birchfield doesn't quite come out and say it like that. It doesn't use those precise words, but I think the notion is there as the board properly found one particular place to look at is on page appendix 2516. That was the third of those three sites that the board had provided at the very bottom of the page there. Which column? This is in the first column, left-hand side, last partial paragraph. This is the control process, and this is the control process for the station. The control process for the station is another independent process for initializing the network and causing dynamic routing changes in response to changes in repeater terminal propagation connectivity. As new repeaters or as new terminals report in, you might have new, better routes that become available. It says that it's making these changes dynamically. As new, better routes become available, those changes are then made to reroute according to the minimum distance route. I assume that that was the 824 citation to 250. That 824 citation also is to 247, 248. Can you pinpoint where on 247, 248 you think that citation goes to? Yes, Your Honor. The notion, I think it's this whole discussion on 247 and 248, and I think there's further particular passages that are pointed out. If you look at 824, it also cites the declaration from Emerson's expert, Mr. Geyer. This is at paragraph 66 of his declaration that the corresponding site is Appendix 4139. Mr. Geyer walks through several passages and excerpts from pages 247 and 248 of the Birchville reference. I'll direct the Court's attention just to a couple spots. On Appendix 2513, the notion of relabeling, if you look at the right-hand column at the very top, it's talking about the station using search packets arriving to generate the connectivity matrix, but also to relabel. So as new, better paths become available, relabeling takes place, providing the individual nodes with better connections, minimum distance connections, back to the station. I'm not sure it matters if you're right about the claim construction, but I thought part of what you were talking about was the idea that even under IP Code's claim construction, in which, as I understand it, and I may be summarizing incorrectly, the claim is all about two existing functioning transmission paths and a choice between them, and not at all about choosing a functioning path over a non-functioning path. So where in this, 247, 248, etc., is there a reference to making a choice between two functioning paths? I think that the passage on page 250, Your Honor, is probably the best place for that. That passage at the bottom where it discloses causing dynamic routing changes in response to changes in the repeater terminal propagation connectivity. Is propagation connectivity simply will it get there, or is that a more non-discrete, non-binary measure of how good the getting there is? The latter, Your Honor. It is a, as you have new paths that arise that are better, more optimal, shorter distance, if you will, that's what that passage is referring to, making those dynamic changes as the network setup changes. I think in the example that Judge Chen used earlier was when a new terminal would join the network, it might create a shorter path, or a new repeater joins the network, it might create a shorter path between two points than what previously existed. And that relabeling that would then take place because the connectivity had changed would then allow the station to optimize and under IPCO's construction make a choice to choose a new and better minimum distance route. IPCO had also alluded to the issue of the I-95 analogy that was simply an example where the board was probably using an analogy to identify a flaw in IPCO's analysis. It wasn't a change in the theory, it was simply a way to illustrate why IPCO's arguments were incorrect. Similar to the example that Your Honor gave of a path working yesterday and no longer working today and needing to change. Why doesn't the claim term optimize just inherently suggest we're looking at trying to improve an already working situation and make it better? Go from a good thing to a better thing. And I think there is that notion of optimization that I think that's met in multiple ways by Birchfield as well as the Schwartz reference. Birchfield looking for minimum distance routes. If a repeater fails, for example, at a particular time. Right, if a repeater fails then you're going from nothing to something that functions. At that particular time you're going from nothing to something that functions but it may come back online, it might have moved. These are dynamic networks and they're dynamically making improvements and changing. In addition to the fact that Birchfield, I'm sorry, the Schwartz reference talks about four different possible optimization criteria beyond simply minimum distance but you might have it based off of speed or based off of least traffic or based off of robustness in terms of security. All those are different optimization criteria that can be applied. And as Birchfield points out and as the board properly found, that's done dynamically. That's done as the network changes over time and you would need to relabel particular nodes. Are there any further questions, your honor? Thank you for your time. Thank you for your argument. I'll be really quick, your honor. The passage that was just cited by my colleague in Birchfield, which starts on APPX2516 at the bottom of the last paragraph on the first column and extends over to the second column. That paragraph is speaking about dynamic routing changes in response to changes in repeater terminal propagation connectivity or repeater failures. That means that this paragraph pertains to when there is not a connection and when there's a repeater failure, in which case there's not a connection then either. When it talks about the connectivity matrix, there's no dispute in this case that the connectivity matrix in Birchfield does not have any paths in it. Instead, it just talks about whether a node has a connection to a neighboring node. And so just because the connectivity matrix may be updated, that doesn't mean that you're changing an existing path in the network. And with respect to... What do you understand dynamic routing to be in Birchfield? Okay, the word dynamic means that it's not static, that it happens on the fly as time is going on, right? So Tom Brady makes a plan, but then there's a blitz, so he dynamically makes a different plan, throws to a different receiver. That's all that that term means. And then you figure out, well, in what context is it? And you continue reading on that paragraph, and you say it says it's in the context of repeater or connectivity failures. So in those cases, the path does not exist. And you're just creating a path. And with respect to claim construction, if I may, this is my cell phone, and I know that this isn't functioning, because this is the battery. The battery is not in the phone. It requires electricity to run, and it's not functioning. There are no transmission paths through this phone that doesn't have a battery in it. That can be changed. Last question, do you have an expert declaration commenting on this particular aspect of Birchfield at 825.16 and then 825.13-14? I know it's there. I'm trying to find it. If you cited it in your briefs, I'm sure we'll find it. Yeah, I did cite it in the briefs. Okay, we'll find it then. Okay, thank you very much. Thank you. Thank all counsel. The case is submitted. Thank you.